IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARGERY MCCARRAGHER, ET AL., on behalf of themselves and all others similarly situated, | § § § § | Civil Action No. 3:11-cv-00055 |
| Plaintiffs, | § § | |
| v. | § § | COLLECTIVE ACTION  (JURY TRIAL) |
| THE RYLAND GROUP, INC. and RYLAND HOMES OF TEXAS, INC. | § § § | |
| Defendants. | § § | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Margery McCarragher, Sophronia Williams, and Erica Rouse, on behalf of themselves and all other similarly situated individuals (collectively, "Plaintiffs") file this Response to Defendants' Rule 12(b)(6) Motion to Dismiss, and in support thereof would respectfully show as follows:

### I.  SUMMARY OF RESPONSE

On January 24, 2011, Plaintiffs filed this collective action against Defendants The Ryland Group, Inc. and Ryland Homes Texas, Inc. ("Defendants" or "Ryland") pursuant to the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA") for failure to pay overtime wages and/or minimum wages to Plaintiffs and similarly situated Ryland inside salespersons.  Ryland describes itself as "one of the nation's largest home builders and a leading mortgage finance company."[1]

---

[1] Exs. B-2 to B-6.

Plaintiffs were employed by Ryland as inside salespersons selling Ryland's new homes and mortgages while working inside Ryland's sales offices.  Plaintiffs are all inside salespersons who were misclassified as exempt, paid on a commission basis and denied overtime compensation and/or minimum wages.[2]  To date, a total of 12 Ryland salespersons have filed a notice of consent join this matter.

Ryland filed its answer on February 28, 2011.[3]  Ryland asserted various affirmative defenses in their answer, but failed to plead or assert the affirmative defense of the outside sales exemption.  Defendants have now filed a FED. R. CIV. P. 12(b)(6) Motion to Dismiss asserting that Plaintiffs have failed to state a claim upon which relief can be granted because Plaintiffs' claims are barred by the outside sales exemption.  Ryland's motion is untimely and must be denied.  A Rule 12(b)(6) motion to dismiss must be filed before the defendant files an answer. *See* FED. R. CIV. P. 12(b) (a motion asserting the defense of failure to state a claim upon which relief can be granted "must be made before pleading if a responsive pleading is allowed.").

Ryland's motion is based on the Court's ruling in *Edwards, et al. v. KB Home*, to which Plaintiffs have filed a Motion for Reconsideration that is scheduled for an oral hearing on September 19, 2011. [4]   In patterning their dismissal argument on KB Home's position in *Edwards v. KB Home*, Ryland also relies on two opinion letters issued by the Wage and Hour Division of the Department of Labor, FLSA 2007-1 (Ex. E-1) and FLSA 2007-2 (Ex. E-2).  Even if Ryland's motion were timely—which it is not—the outside sales exemption is an affirmative defense that must be pled and proved by Ryland.  As such, Defendants bear the burden of

---

[2] Plaintiffs' Orig. Complaint [Doc. No. 1].
[3] Defendants' Original Answer to Plaintiffs' Original Complaint.  [Doc. No. 12].
[4] Defendants' motion is premised on the Court's ruling in *Edwards, et al. v. KB Home*, C.A. No. 3:11-cv-240, of which the plaintiffs are seeking reconsideration.

2

demonstrating that an FLSA exemption applies and exemptions are "narrowly construed against an employer." *Auer v. Robbins*, 519 U.S. 452, 462, 117 S.Ct. 905 (1997).

In examining the pleadings, ***Ryland failed to even plead the outside sales exemption as an affirmative defense in its answer.*** Defendants' Answer [Doc. No. 12]. A defendant generally must plead an affirmative defense in its answer or it is waived. *See* FED. R. CIV. P. 8(c); *John R. Sand & Gravel Co. v. U.S.*, 552 U.S. 130, 133 (2008). Ryland cannot obtain a Rule 12(b)(6) dismissal with respect to an affirmative defense that they have never pled, and therefore, has been waived. Moreover, as discussed below there is ample evidence that Plaintiffs do not fall within the outside sales exemption.

## II. EVIDENCE SUPPORTING RESPONSE

Plaintiffs attach in support of this Response as Exhibit A-1 to A-10 the sworn declaration of plaintiffs and opt-in plaintiffs Margery McCarragher, Erica Rouse, Sharon Kuperman, Ronald Rivas, Judith Goode, Shirley Johnson, Kelly Mai, Larry Ellis, William Mitchell and Roxanne Gray. Further, Plaintiffs attach in support of this response the following documents relating to the job duties and work hours of Ryland's salespersons: Exhibits B-1 to B-6, Ryland's sales counselor job description and Ryland's sales job postings; Exhibit C-1, Ryland's loan consultant information; Exhibits D-1 to D-2, Ryland sales counselor handbook; Exhibits E-1 to E-2, Wage and Hour Division of the Department of Labor, Opinion Letters FLSA 2007-1 and FLSA 2007-2; and Exhibit F-1, Ryland's sales compensation agreement.

### III. ARGUMENT & AUTHORITIES

**A.     RULE 12(B)(6) MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM ARE DISFAVORED.**

Ryland's Rule 12(b)(6) motion to dismiss is untimely[5] and without merit.  Generally, motions to dismiss for failure to state a claim are viewed with disfavor.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); 5B WRIGHT & MILLER §1357, n. 34. Under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir. 1991)).

Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted).  Recently,   in   *Ashcroft    v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient assertions, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly* at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft, 129 S. Ct. at 1949* (citing *Twombly,* 550 U.S. at 556).

---

[5] A Rule 12(b)(6) motion to dismiss must be filed before the defendant files an answer.  *See* FED. R. CIV. P. 12(b) (a motion asserting the defense of failure to state a claim upon which relief can be granted "must be made before pleading if a responsive pleading is allowed.").

When considering a 12(b)(6) motion to dismiss, a court determines whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See, Twombly,* 550 U.S. at 563 n.8 (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (overruled on other grounds)); *see also*, *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.  *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 255-57 (5th Cir. 2009).

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co*., 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F. 3d 464, 467 (5th Cir. 2004).  "[D]ismissal will not be affirmed if the allegations [made] support relief on any possible theory" of recovery. *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 261 (5th Cir. 1999) (internal citations omitted).  Only if no possible construction of the alleged facts will entitle plaintiffs to relief should the Court grant Ryland's motion. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984).

**B.     RYLAND IS NOT ENTITLED TO DISMISSAL WITH RESPECT TO AN AFFIRMATIVE DEFENSE—THE OUTSIDE SALES EXEMPTION.**

Under the Rule 12(b)(6) standard of review, a court accepts "all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co*., 624 F.3d 201, 210 (5th Cir. 2010).  Further, a court should "draw all reasonable inferences in Plaintiffs' favor." *Id*.; *see also Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (noting that motions to dismiss are viewed with disfavor and rarely granted). To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead "enough facts to

state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

A plaintiff typically is not required to plead, in the complaint, facts that negate an affirmative defense. *Jaso v. Coca Cola Co*., 2011 U.S. App. LEXIS 15875, 9-10 (5th Cir. Tex. Aug. 1, 2011); *see also Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (plaintiffs are not required to "specially plead or demonstrate" a response to the affirmative defense of failure to exhaust administrative remedies in a complaint brought under the Prison Litigation Reform Act). Nor did the pleading standards announced in *Twombly*, "revise the allocation of burdens concerning affirmative defenses." *Jaso v. Coca Cola Co*., 2011 U.S. App. LEXIS 15875, 9-10 (5th Cir. Tex. Aug. 1, 2011).

A complaint need not anticipate or attempt to defuse potential defenses, and failure to do so is not grounds for dismissal. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980) (overturning dismissal on grounds that plaintiffs should not have to anticipate qualified immunity defense). A motion to dismiss should be granted only where an affirmative defense clearly prevents all conceivable recovery on the underlying claim. *Jones v. Bock,* 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). An exemption under the Fair Labor Standards Act is an affirmative defense on which the <u>employer</u> bears the burden of proof. *Donovan v. Hamm's Drive Inn*, 660 F.2d 306, 317 (5th Cir. 1981). FLSA "exemptions are 'construed narrowly against the employer seeking to assert them.'" *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. Tex. 1990).

The outside sales exemption in this context is premised on an examination and determination of the qualitative and quantitative nature of the sales work performed by Plaintiffs outside of Ryland's places of business. Ryland has the heavy burden of proving that the

exemption—which the Supreme Court has held is to be "narrowly construed against" the employer, applies to the Plaintiffs.  Plaintiffs have pled facts and provided evidence to support their contention that they performed inside sales which entitles them to overtime compensation, not outside sales.  Ryland is not entitled to a Rule 12(b)(6) dismissal under these circumstances.

**C.    OVERVIEW OF THE OUTSIDE SALES EXEMPTION.**

FLSA section 13(a)(1), 29 U.S.C. § 213(a)(1), provides an exemption from the minimum wage and overtime provisions for "any employee employed . . . in the capacity of an outside salesman."  In order to prevail on the outside sales exemption, the employer must prove that the employee meets the statutory definition of an "outside salesman."  Under 29 C.F.R. 541.500(a), the term "outside salesman" means any employee:

"(1)    Whose primary duty is:

(i)    making sales within the meaning of section 3(k) of the Act, or

(ii)    obtaining orders or contracts for services or for the use of facilities for which consideration will be paid by the client or customer; and

(2)    Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."

29 C.F.R. 541.500(a). Thus, in order to qualify as an outside salesman, the two general requirements are that (1) the primary duty is sales; and (2) the sales are customarily and regularly made away from the employer's places of business.

Further, the regulations provide that:

"***The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home.***  Outside sales does not include sales made by mail, telephone or the Internet unless such contact is merely as an adjunct to personal call.  Thus, ***any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business***, even if the employer is not in any formal sense the owner or tenant of the property."

7

29 C.F.R. § 541.502 (emphasis added).

The FLSA outside sales exemption only applies to salespersons who "customarily and regularly" make sales away from the employer's place of business, such as sales made at the customer's home or customer's place of business. 29 C.F.R. §541.502. Sales made from the employer's place of business, satellite offices, or similar 'fixed sites,' are not outside sales. Accordingly, under the regulation, if sales are made from any office of the employer, such sales are deemed "inside sales." 29 C.F.R. §541.502.

The Department of Labor has made clear that a "[model home] sales office is the employer's place of business, because it is a fixed site used as a 'headquarters for making sales.'" Wage & Hour Op. Letter, FLSA 2007-1 at *4 [Ex. E-1], citing 29 C.F.R. § 541.502 ("any fixed cite, whether home or office, may be used by a salesperson as a headquarters or for telephonic solicitation is considered one of the employer's places of business"). Here, Plaintiffs worked from and reported to on a daily basis a model home sales office ("sales office" or "model home sales office").[6] Plaintiffs worked inside Ryland's model home sales offices, which are deemed performing work at Ryland's place or places of business.

Salespersons who perform "inside sales"—meaning sales made at the employer's place or places of business—are deemed non-exempt under the FLSA and are entitled to overtime compensation and minimum wages. See 29 C.F.R. §541.502. Only those salesperson who perform "outside sales"—meaning sales away from the employer's places of business—are exempt from the overtime and minimum wage provisions of the FLSA. Id.

---

[6] Sworn Decls., Exs. A-1 to A-10, at ¶¶ 4-5.

**D.      PLAINTIFFS DO NOT MEET THE DEFINITION OF THE OUTSIDE SALES EXEMPTION AND ARE ENTITLED TO OVERTIME AND MINIMUM WAGES.**

There are two pivotal issues to be resolved in determining whether Plaintiffs are outside salespersons:

1.      whether Plaintiffs' "primary" duty was sales; and

2.      whether Plaintiffs' "customarily and regularly" performed sales of new homes and mortgages <u>away</u> from Ryland's places of business.

Even assuming *arguendo* that it would be proper to grant a 12(b)(6) dismissal on the basis of an FLSA exemption, the dismissal can only be granted if the Court determines that "it is clear that [Plaintiffs] can prove no set of facts that would entitle them to relief."  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 313 (5th Cir. 2002).

As discussed below, Plaintiffs do not meet the outside sales exemption because (1) Plaintiffs' performance of non-exempt, non-sales work—such as handing customer service, warranty complaints, and training—excludes them from the definition; and (2) Plaintiffs did not "customarily and regularly" perform sales away from Ryland's places of business.  Plaintiffs' sales were—100% of the time—conducted at sales offices maintained by Ryland as regular business offices for the purpose of selling new homes in residential developments and for selling Ryland's mortgages.[7]  Ryland relies on two Wage and Hour opinion letters issued by the Department of Labor ("DOL"), FLSA 2007-1 and FLSA 2007-2,[8] to establish the guidelines for the outside sales exemption.  Under the standard set by these opinion letters, Plaintiffs are not subject to the outside sales exemption.

---

[7] Sworn Decls., Exs. A-1 to A-10, at ¶¶ 4, 5, 6, 14, and 15.
[8] Wage & Hour Op. Letter, FLSA 2007-1 (Jan. 25, 2007) (Ex. E-1); Wage & Hour Op. Letter, FLSA 2007-2 (Jan. 25, 2007) (Ex. E-2).

1.    **ISSUE 1: WHETHER PLAINTIFFS' PRIMARY DUTY WAS SALES AND WHETHER PLAINTIFFS' NON-EXEMPT AND NON-SALES WORK EXCLUDES THEM FROM THE OUTSIDE SALES EXEMPTION.**

In determining the primary duty for the outside sales exemption, the regulations provide that:

> "work performed incidental to and in conjunction with the employees own sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work.  Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences."

29 C.F.R. 541.500(b) (emphasis added).

In Opinion Letter FLSA 2007-2 (Ex. E-2), the DOL determined that the sales agent met the first prong of the outside sales exemption because "most, if not all, of a sales employee's time [was] spent on sales or sales-related activities.  ***Sales employees spen[t] at most one or two hours a week performing work that is not otherwise incidental to and in conjunction with their own sales and solicitations***."[9]

The DOL further defined what constitutes work that is "incidental to and in conjunction with" a new home salesperson's own sales or solicitations:

> "Other duties of the sales employees such as meeting with prospects, real estate sales employees, or others involved in the home buying process; showing properties and communities to prospects; touring and demonstrating model homes and home sites; and meeting with customers, real estate sales employees, construction personnel, and others to ensure customer satisfaction throughout the sale and construction of the new home, are examples of work performed incidental to and in conjunction with the sales employee's own outside sales or solicitations. In addition, such tasks as completing sales-related paperwork, prospecting customers, engaging in a wide variety of marketing efforts including creating customer contact cards and promotional materials, following up with customers, scheduling appointments, calling real estate sales employees to generate interest in the homes, and learning about the homes are also considered the type of duties that further the employee's sales efforts and, therefore, are regarded as exempt work."

---

[9] Op. Letter FLSA 2007-2 at p. 3.

Op. Letter FLSA 2007-2 at pp. 3-4 (Ex. E-2).  Likewise,

> "Other duties of the sales associates, such as contacting the prospective buyer by telephone following a site visit to respond to questions concerning financing or construction delays, inspecting each model unit at the start and end of the workday to ensure readiness of model units for buyer walk-throughs, aiding a prospect in completing the sales registration form, meeting with independent realtors to obtain information concerning existing home inventories, "shopping the competition," and traveling to and attending sales training programs, are, in this case, examples of work performed incidental to, and in conjunction with, the sales associates' own outside sales or solicitations. These are also the type of duties that further the employee's sales efforts and, therefore, are regarded as exempt work."

Op. Letter FLSA 2007-1 at p. 4 (Ex. E-1).

This exhaustive list of duties that are deemed "incidental to and in conjunction with" a new home salesperson's duties does not include any mention of handling customer service complaints and warranty complaints and providing training to other employees.  That is because customer service and warranty work is performed after the sale is complete, and the homeowner has moved into their new home and has issues that must be resolved after the completion of the house and the close of the sale.[10]  Nor does this list include providing training to other employees because such duties are clearly unrelated to the salesperson's own sales and solicitations.[11] Accordingly, this work is not incidental to or in conjunction with a salesperson's own sales or solicitations.

The DOL has determined that "***most, if not all***" of the new home salesperson's time must be "spent on sales or sales-related activities" in order to qualify for the outside sales exemption.[12] Further, the DOL has set a threshold of "***at most one or two hours a week***" that may be spent by new home salespersons performing work that is not incidental to and in conjunction with their

---

[10] *See* Ryland's Sales Counselor Handbook, Ex. D-1 at p. 6 ("customer service" section).
[11] *See* Ryland's Sales Counselor Job Description, Ex. B-1 at p. 2, §V.C ("Assist with training new Sales Counselors as needed); §V.G ("Assist with all other duties and projects as directed by management.").
[12] Op. Letter FLSA 2007-2 at p. 3.

own sales or solicitations in order to be deemed outside salespersons.[13] Here, Plaintiffs spent an average of ***more than 10 hours each week*** performing non-sales related work handling customer service and warranty complaints, training new employees, and performing "other duties and projects as determined by management."[14]  Such work is not incidental to or in conjunction with their own sales or solicitations as defined by the regulations.  Accordingly, Plaintiffs are not subject to the outside sales exemption.

      **2.**     **ISSUE 2: WHETHER PLAINTIFFS CUSTOMARILY AND REGULARLY PERFORMED SALES AWAY FROM RYLAND'S PLACES OF BUSINESS.**

The second prong of the outside sales exemption requires that the salesperson be "customarily and regularly away from the employer's place of business" in performing their primary duty of sales.  Wage & Hour Op. Letter, FLSA 2007-1 (Jan. 25, 2007) at p. 4 (Ex. E-1). Salespersons operating from sales offices may be deemed exempt as outside sales employees where their duties require their frequent absence from the sales offices.  *See* Wage & Hour Op. Letter, FLSA 2007-1 (Jan. 25, 2007); Wage & Hour Op. Letter, FLSA 2007-2 (Jan. 25, 2007). Based on the assessment of the DOL in its opinion letters, the qualitative and quantitative nature of the sales work performed by Plaintiffs outside of Ryland's places of business—if any—will be critical to the determination of whether the outside sales exemption applies.

The DOL opinion letters on which Ryland relies describe new home sales positions in which the sales agents' job required them to be out of the sales office for at least 50% of their normal work day, to often travel 10 to 20 miles to the location of the new home or lot being sold, and to report to work at a different, more permanent office than the model home sales offices.

---

[13] Op. Letter FLSA 2007-2 at p. 3.
[14] Sworn Decls., Exs. A-1 to A-10, at ¶19; *See* Ryland's Sales Counselor Handbook, Ex. D-1 at p. 6 ("customer service" section); *see also* Ryland's Sales Counselor Job Description, Ex. B-1 at p. 2, §V.C ("Assist with training new Sales Counselors as needed); §V.G ("Assist with all other duties and projects as directed by management.").

The job of the Plaintiffs here is quite different.  Plaintiffs spent over 90% of their normal work day working in the sales offices and all of their sales were made in Ryland's places of business.[15]  In fact, the Plaintiffs have attested that:

> "All contracts for sale of new homes that [Plaintiffs] obtained were entered into in the sales office.  Also, all of the mortgage sales that [Plaintiffs] made were done at the sales office.   [Plaintiffs] did not make sales at customers home or businesses."[16]

As discussed in greater detail below, Plaintiffs were discouraged from leaving the sales office for extended periods of time, and were subject to disciplinary action for being absent from the sales office.[17]  Unlike the sales agents described in the DOL opinion letters on which Ryland relies, the Plaintiffs here did not customarily and regularly perform sales outside of Ryland's places of business.

In *Tracy v. NVR, Inc.*, the district court conducted an analogous inquiry examining whether new home salespersons were exempt under the outside sales exemption pursuant to the guidelines of the DOL opinion letters at issue here. 599 F. Supp. 2d 359 (W.D.N.Y. 2009).  In *Tracy*, the district court found pivotal distinctions with the sales positions described in the DOL opinion letters such that a fact issue existed whether the *Tracy* plaintiffs fell within the outside sales exemption.   Like *Tracy*, there are distinctions here that create fact issues precluding dismissal.

### (a)   RYLAND REQUIRED PLAINTIFFS TO WORK IN THEIR SALES OFFICES.

Ryland required their salespersons to be present in the sales offices and to work from Ryland's sales offices, which are deemed their places of business.  For example, in Ryland's job

---

[15] Sworn Decls., Exs. A-1 to A-10, at ¶ 5 ("In a typical week, I spent over 90% of my normal workday in the sales office.").
[16] *Id*. at ¶ 14.
[17] Sworn Decls., Exs. A-1 to A-10, at ¶ 8; Ex. B-1.

description for its sales counselor position, Ryland provides that sales counselors are required to "[e]nsure the model/sales center IS open and staffed during all hours of operation."[18]

Further, in the Ryland sales compensation agreement, Ryland makes it clear that their salespersons must work and be present at the sales offices as a condition of employment:

> "**REPRESENTATION AT RYLAND SALES OFFICE**. . . . *The Employee must insure that the sales office is maintained and staffed in a professional manner. Employee acknowledges that Ryland model homes are open seven days a week during the hours publicly designated at the individual sales offices*, absent prior written authorization from the Division President.  Ryland may require Employee to work additional hours or perform additional duties as it determines in its sole discretion."[19]

It is evident that Ryland requires their salespersons to work inside the sales offices, which is deemed "inside" sales, rather than outside sales.

> **(b)** **PLAINTIFFS' SALES JOB IS DISTINGUISHABLE FROM THE OUTSIDE SALES POSITION DESCRIBED IN OPINION LETTER FLSA 2007-1.**

Opinion Letter FLSA 2007-1 [Ex. E-1] involves sales associates stationed in temporary sales office trailers away from the new home development, and who were "expected to travel outside the sales office" in order to (a) meet with independent realtors; (b) explore communities; (c) shop the competition; (d) attend sales training programs; and (e) inspect model homes, such that in a typical week, the salesperson spent approximately **50%** of his time away from the sales office.  Op. Letter, FLSA 2007-1 at p. 2.

Plaintiffs' position here is very different and clearly distinguishable from the "outside sales" position described in Opinion Letter FLSA 2007-1, in at least the follow ways:

---

[18] Ex. B-1 at p. 2, §III.F.
[19] Ex. F-1, at p. 4, §13.

(1)     **AMOUNT OF TIME SPENT WORKING IN THE OFFICE.**

<u>Opinion Letter FLSA 2007-1</u>: In a typical week, the salesperson spent approximately *one-half or 50%* of their time working outside the sales office or model home.[20]

<u>Plaintiffs in this Case</u>:  In a typical work week, Plaintiffs spent *over 90%* of their normal workday in the sales offices.[21]

(2)     **WORKING 'CUSTOMARILY AND REGULARLY' OUTSIDE THE OFFICE.**

<u>Opinion Letter FLSA 2007-1</u>: The fact that the salesperson's activities away from the sales office "constitute[d] a significant amount of the sales associate's typical workweek demonstrate[d] that the outside activities [were] 'customary and regular.'"[22]

<u>Plaintiffs in this Case</u>:  Plaintiffs spent over 90% of their time in the sales offices.  Thus, any outside activities were not "customary and regular." [23]  As described *infra* at pages 13-14, Ryland unequivocally required their salespersons to be present in and to work from their sales offices.

(3)     **PROXIMITY TO HOUSES AND COMMUNITIES BEING SOLD.**

<u>Opinion Letter FLSA 2007-1</u>: Sales associates worked in offices as far as 10 to 20 miles away from the development for which they were selling homes. [24]  Hence, they were required to travel a great distance to the homes that they were selling and spend extended periods of time outside the sales office.

<u>Plaintiffs in this Case</u>:  Plaintiffs worked in model home sales offices within the development and generally within a 1 or 2 mile radius of the homes that they were selling.[25]

(4)     **AMOUNT OF WORK TIME SPENT ON THE TELEPHONE.**

<u>Opinion Letter FLSA 2007-1</u>: "Sales associates spen[t] relatively little work time on the telephone, typically 60 minutes or less per work day."[26]  Thus, the salespersons were rarely in the office on the telephone and were outside the office in their sales efforts.

---

[20] Op. Letter FLSA 2007-1 [Ex. E-1] at p. 2 ("In a typical week, the company's associates spend approximately as much time in these activities away from the sales office or model home as they do in their in-office activities.").

[21] Sworn Decls., Exs. A-1 to A-10, at ¶ 5.

[22] Op. Letter FLSA 2007-1 at p. 5 (citing 29 C.F.R. § 541.500(a)(2)).

[23] Sworn Decls., Exs. A-1 to A-10, at ¶ 5.

[24] Op. Letter FLSA 2007-1 at p. 1.

[25] Sworn Decls., Exs. A-1 to A-10, at ¶ 7.

[26] Op. Letter FLSA 2007-1 at p. 1.

<u>Plaintiffs in this Case</u>:  Plaintiffs spent "several hours each day on the telephone in the sales office."[27]  These calls required Plaintiffs to spend their time in the sales offices.

**(5)      WORK ACTIVITIES IN CONSTRUCTION PROCESS AWAY FROM SALES OFFICE.**

<u>Opinion Letter FLSA 2007-1</u>:  "The sales associate [was] required to attend pre-construction orientation with the buyer, to walk the home site with the buyer, to show the buyer how the home [was] to be constructed, and to point out exterior features such as where the well and septic systems [were] to be located."[28]

<u>Plaintiffs in this Case</u>:  Plaintiffs did not perform these construction duties.  These construction duties were handled by Ryland's construction managers rather than the salespersons.[29]  While Plaintiffs did attend a pre-construction meeting, the meeting was held at the sales office.[30]

**(6)      PROXIMITY OF SALES OFFICE TO COMMUNITY.**

<u>Opinion Letter FLSA 2007-1</u>:  "The company's sales offices may or may not be located within a community that is under development."[31]

<u>Plaintiffs in this Case</u>:  Plaintiffs worked in Ryland's sales offices located in communities under development.[32]

**(7)      WHERE THE INDISPENSIBLE AND CRITICAL ASPECTS OF THE SALES PROCESS OCCURRED.**

<u>Opinion Letter FLSA 2007-1</u>:  "The visual inspection of the properties for sale in the community and the sales associate's ability to demonstrate the unique architectural and design features of the company's home products outside of the office [were] critical to the sales process."[33]

<u>Plaintiffs in this Case</u>:  All of the critical or indispensable components of the sales activities took place within the model home sales office.  All mortgage loan sales were made in the sales office where Plaintiffs used their computer to obtain the customer's credit score, collect income and debt information, calculate the buyer's debt to income ratio and sell the Ryland mortgage loan to the buyer.[34]  A critical component of selling

---

[27] Sworn Decls., Exs. A-1 to A-10, at ¶ 11.
[28] Op. Letter FLSA 2007-1 at p. 1.
[29] Sworn Decls., Exs. A-1 to A-10, at ¶ 12; *See also* Ex. D-1 at p. 5.
[30] Sworn Decls., Exs. A-1 to A-10, at ¶ 12.
[31] Op. Letter FLSA 2007-1 at p. 1, 4.
[32] Sworn Decls., Exs. A-1 to A-10, at ¶ 4; Exs. C-1 to C-13, Ryland job postings ("present and sell features and benefits of new homes within a Ryland community").
[33] Op. Letter FLSA 2007-1 at p. 5.
[34] Sworn Decls., Exs. A-1 to A-10, at ¶ 11, 15; *see also* Ex. C-1.

16

homes to Ryland's buyers was to demonstrate the model home where the sales office was located.  Ryland spends hundreds of thousands of dollars in developing these model homes, which also act as the sales offices.  Plaintiffs were trained and required to demonstrate the features of the model home to potential customers so that they could sell the customer on the "dream" of owning a beautiful Ryland house.  The model home was an especially effective selling tool because it contained many upgrades[35] and a professional décor with expensive furnishings and drapery.  The demonstration of the model, of course, took place in the model home sales office.[36]

### (8)    MORTGAGE SALES DUTIES.

Opinion Letter FLSA 2007-1:  The Opinion Letters at issue make no mention of any mortgage sales being conducted by the salespersons at issue.

Plaintiffs in this Case:   A large part of Plaintiffs' job involved selling Ryland's mortgages, which was a critical aspect of their sales position and a basis for the commissions paid to Plaintiffs.  Plaintiffs spent a significant amount of their time selling mortgages, as well as new homes.  All of the mortgage sales activities took place within Ryland's sales offices.[37]

### (9)    LOCATION OF INTERACTION WITH REALTORS.

Opinion Letter FLSA 2007-1:  Salespersons were expected to travel outside the sales office to meet with independent realtors regarding the benefits of the homes and the community they were selling.[38]

Plaintiffs in this Case:  Plaintiffs rarely left the office to meet with realtors.  Instead, they often met with realtors at the scheduled marketing events that Ryland held at the sales offices.  Plaintiffs also communicated with realtors about the available homes and the community through email and telephone calls.  Face-to-face visits outside the sales office were rarely necessary.[39]

### (10)    REQUIREMENTS FOR SHOPPING THE COMPETITION.

Opinion Letter FLSA 2007-1:  Salespersons were required to "shop the competition" by leaving the office.[40]

Plaintiffs in this Case:  Plaintiffs shopped the competition through internet research and phone calls from the sales office.[41]

---

[35] See Ex. D-1 at p. 3 ("It is important to point out the custom upgrades that have been added to the model homes at additional costs.").
[36] Sworn Decls., Exs. A-1 to A-10, at ¶ 15.
[37] Sworn Decls., Exs. A-1 to A-10, at ¶ 11, 15; see also Ex. C-1.
[38] Op. Letter FLSA 2007-1 at p. 2.
[39] Sworn Decls., Exs. A-1 to A-10, at ¶ 9.
[40] Op. Letter FLSA 2007-1 at p. 2.

(11)   LOCATION OF SALES TRAINING.

Opinion Letter FLSA 2007-1:   "[S]ales associates also spen[t] an additional one to two hours per week traveling to and attending sales training programs offered by the company in locations *away from the sales offices*."[42]

Plaintiffs in this Case:   Plaintiffs' training was held at the sales offices.[43]   In fact, much of Ryland's training for its salespersons was done online via computer.[44]

Accordingly, Plaintiffs performed "inside" sales, as opposed to the outside sales described in Opinion Letter FLSA 2007-1, and Plaintiffs did not customarily and regularly perform sales outside of Ryland's places of business.

(c)   PLAINTIFFS' SALES JOB IS DISTINGUISHABLE FROM THE OUTSIDE SALES POSITION DESCRIBED IN OPINION LETTER FLSA 2007-2.

The second opinion letter, Opinion Letter FLSA 2007-2 [Ex. E-2], addresses the scenario in which a model home salesperson is "frequently" absent from the model home sales office, at least one or two hours per day twice a week visiting lots within the development and taking customers to view homes under construction, and where all of the "indispensible components of his sales efforts take place during those outside visits." Wage & Hour Op. Letter, FLSA 2007-2 (Jan. 25, 2007. Specifically, the Opinion Letter finds that

*"[i]t is the nature of the time spent outside the model home, rather than the amount of time, that drives our conclusion*.   *Virtually all of the indispensable components of the sales efforts are concentrated in the outside period*."

*Id.* at p. 4, n.3 (emphasis added).   Here, Plaintiffs are distinguishable from the salespersons described in Opinion Letter FLSA 2007-2 in at least the following ways:

---

[41] Sworn Decls., Exs. A-1 to A-10, at ¶13.  One of the proficiencies required of Ryland's salespersons was computer skills. (Exs. B-2 to B-6).
[42] Op. Letter FLSA 2007-1 at p. 2.
[43] Sworn Decls., Exs. A-1 to A-10, at ¶18.
[44] *Id*.

18

**(1)    SALES OFFICE AMENITIES AND LOCATION FOR DAY-TO-DAY BUSINESS.**

Opinion Letter FLSA 2007-2: The salesperson worked out of a temporary office with "few of the accoutrements of a typical business office."  The builder maintained another "separate permanent office from which other day-to-day operations [were] conducted and to which the sales employees report[ed."[45]

Plaintiffs in this Case:  The model home sales office was the office that Plaintiffs reported to and from which they conducted their day-to-day business activities. The model home sales office contained all of the normal accoutrements of a business office. Ryland did not maintain another separate permanent office to which the salespersons reported to conduct their day-to-day business operations.[46]

**(2)    AMOUNT OF TIME SPENT OUTSIDE THE SALES OFFICE.**

Opinion Letter FLSA 2007-2: Sales employees left the sales office for one or two hours each day twice a week to engage in selling activities."[47]

Plaintiffs in this Case:  Plaintiffs did not frequently leave the sales office and were discouraged from leaving the sales office for extended periods of time.  Plaintiffs' sales activities were conducted within the model home sales office.  On average, Plaintiffs left the office 2 or 3 times a month to show prospective buyers 'spec' or inventory homes and vacant lots in the community.  There were many weeks during which Plaintiffs never left the sales office to show spec homes or lots.[48]

**(3)    WHETHER INDISPENSIBLE COMPONENT OF SALES PROCESS INVOLVED LEAVING MODEL HOME SALES OFFICE.**

Opinion Letter FLSA 2007-2: An "indispensible component" of the sales process was to take buyer out to various home sites.[49]

Plaintiffs in this Case:  All of the efforts regarding the sales of mortgages took place within the Ryland sales offices.  Demonstrating the model home and the features of the professionally decorated model home, which included many upgrade features, was the critical tool for Plaintiffs' sales efforts with respect to Ryland's houses.  This did not require leaving the model home sales office.  The sales offices also contained a layout of all available homes sites, as well as the floor plans and price lists for all available homes. These were the critical and indispensible components for Plaintiffs' sales process.[50]

---

[45] Op. Letter FLSA 2007-2 [Ex. E-2] at p. 1.
[46] Sworn Decls., Exs. A-1 to A-10, at ¶ 6.
[47] Op. Letter FLSA 2007-2 at p. 1.
[48] Sworn Decls., Exs. A-1 to A-10, at ¶7-8.
[49] Op. Letter FLSA 2007-2 at p. 1.
[50] Sworn Decls., Exs. A-1 to A-10, at ¶14-15.

Accordingly, Plaintiffs performed "inside" sales, as opposed to the outside sales described in Opinion Letter FLSA 2007-2, and did not customarily and regularly perform sales outside the sales offices.

**E.  ALTERNATIVELY, PLAINTIFFS SEEK LEAVE TO AMEND COMPLAINT.**

Alternatively, and out of an abundance of caution, if the Court determines that there are deficiencies in Plaintiffs' pleadings that would merit a dismissal, Plaintiffs seek leave to amend before the Court dismisses their action.

## IV.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Rule 12(b)(6) Motion to Dismiss, or alternatively, that the Court grant Plaintiffs leave to amend their complaint if found to be deficient, and for all other relief at law or in equity to which Plaintiffs are entitled.

Respectfully submitted,

By: /s/ Rhonda H. Wills
    Rhonda H. Wills
    ATTORNEY-IN-CHARGE
    State Bar No. 00791943
    S.D. Id. No. 20699
    WILLS LAW FIRM
    1776 Yorktown, Suite 600
    Houston, Texas  77056
    Telephone:  (713) 528-4455
    Facsimile:  (713) 528-2047

    /s/ James M. Douglas
    James M. Douglas
    TEXAS SOUTHERN UNIVERSITY
    State Bar No. 06044000
    3100 Cleburne Street, Suite 115
    Houston, Texas 77004
    Telephone: (713) 313-1122
    Facsimile: (713) 313-7968

/s/ Melvin Houston
Melvin Houston
MELVIN HOUSTON & ASSOCIATES, P.C.
State Bar No. 00793987
1776 Yorktown, Suite 600
Houston, Texas  77056
Telephone:  (713) 212-0600
Facsimile:  (713) 212-0290

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on **September 10, 2011**, I electronically filed the foregoing document with the clerk of the court for the Southern District of Texas using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented to accept this Notice as service of this document by electronic means:

Teresa S. Valderrama
JACKSON LEWIS LLP
Wedge International Tower
1415 Louisiana, Suite 3325
Houston, Texas 77002
Telephone: (713) 568-7868
Facsimile: (713) 650-0405
Email: valderrt@jacksonlewis.com

Jeff Barnes
JACKSON LEWIS LLP
Wedge International Tower
1415 Louisiana, Suite 3325
Houston, Texas 77002
Telephone: (713) 650-0404
Facsimile: (713) 650-0405
Email: jeff.barnes@jacksonlewis.com

**ATTORNEYS FOR DEFENDANTS**

/s/ Rhonda H. Wills
Rhonda H. Wills

21