UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARGERY MCCARRAGHER, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3-11-55 |
| | § | |
| THE RYLAND GROUP, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Thirteen current and former salespersons of new homes have filed suit against their employer, The Ryland Group, Inc., and one of its Texas-based subsidiaries, Ryland Homes of Texas, Inc (collectively, "Ryland"). They allege that Ryland, by paying them only commissions, violated the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). Ryland contends that Plaintiffs were properly classified as exempt employees under the FLSA's "Outside Sales Exemption."

Plaintiffs now seek conditional certification so they can provide nationwide notice of this lawsuit to "onsite" salespersons employed by Ryland and its subsidiaries over the three years preceding the filing of this lawsuit. This Court has considered the arguments of counsel, the applicable authorities, and the record in this case, and now **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for conditional certification.

1

## I.   BACKGROUND

Ryland is a major homebuilding company that builds and sells new homes in many states nationwide.   It consists of a parent company, Defendant The Ryland Group, Inc., and a large number of subsidiaries.   One of those subsidiaries is nonparty RH of Texas Limited Partnership, of which another subsidiary, Defendant Ryland Homes of Texas, Inc., is the general partner.

Ryland builds homes as part of planned communities that consist of a large number of individual home plots as well as some community features and neighborhood amenities.   It employs salespersons, each of whom are assigned to a particular Ryland home community.   Salespersons are assigned to work out of temporary sales offices located in the Ryland home communities.   These offices are typically housed within or adjacent to one of the communities' model homes.   Salespersons work from the sales offices to sell new homes to potential customers who visit their assigned community.   Plaintiffs allege that salespersons are also responsible for selling mortgages provided by a Ryland affiliate.

As Ryland's declarations and admissions show, its salespersons generally have similar duties nationwide.   Salespersons are primarily responsible for making sales by taking potential homebuyers on tours of the

model homes, vacant home sites, and neighborhood amenities of new Ryland communities. Salespersons also complete paperwork in the temporary sales office, contact potential homebuyers from the office via telephone and the internet, and perform a variety of miscellaneous duties. Salespersons occasionally go to locations outside their assigned communities to network, distribute promotional materials, attend sales meetings, or perform opposition research.

Plaintiffs allege that Ryland salespersons generally work in excess of 40 hours per week, and normally work weekends. Ryland pays its salespersons on a commission-only basis. Salespersons are paid a small salary during the first several months of employment, but afterwards are paid only commission, with no base salary or any set wages or overtime, even if they fail to sell any homes. Instead of paying a minimum wage in such circumstances, Ryland allegedly allows its salespersons to take a draw, essentially a loan, against future commissions. Through its subsidiaries, Ryland allegedly employs hundreds of these salespersons.

Plaintiffs are current and former employees of Ryland that work in the vicinity of Houston, Texas. They filed this suit in January 2011. In August 2011, subsequent to Judge Hoyt's dismissal of a similar FLSA case filed against another large homebuilder, *see Edwards v. KB Home*, Civil Action

No. G-11-240, 2011 WL 3270250, at *4 (S.D. Tex. July 28, 2011), Ryland filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Ryland contended that two Department of Labor opinion letters interpreting the Outside Sales Exemption to apply to new home salespersons governed this case so that each individual Plaintiff was properly classified as exempt from the FLSA's minimum wage and overtime provisions. *See* Docket Entry No. 23, at 4–6 (citing Wage & Hour Opinion Letter FLSA 2007-1 (Jan. 25, 2007); Wage & Hour Opinion Letter FLSA 2007-2 (Jan. 25, 2007)). However, Judge Hoyt reconsidered his order of dismissal in *Edwards* and reinstated that case in November 2011. *Edwards v. KB Home*, Civil Action No. G-11-240, 2011 WL 7982462, at *1 (S.D. Tex. Nov. 14, 2011). He then denied Ryland's motion to dismiss in February 2012. The case was reassigned to this Court in May 2012, and, in June 2012, Plaintiffs moved to conditionally certify a nationwide collective action.

In support of their motion, Plaintiffs have submitted thirteen essentially identical declarations, as well as public job postings advertising onsite salesperson positions with Ryland in different states. Plaintiffs have also submitted a number of other Ryland documents, including job descriptions, lists of job expectations, salesperson compensation summaries, performance evaluations, and a multiple-choice test used to evaluate

4

salesperson knowledge.  In opposition, Ryland has produced a declaration from Tom Jacobs, the President of RH of Texas Limited Partnership's Houston Division, as well as the declarations of 38 salespersons from various Ryland divisions nationwide.   Ryland has also submitted declarations made by five of the Plaintiffs.

## II.   LEGAL STANDARD

Under the FLSA, nonexempt employees must be paid a legally prescribed minimum hourly wage.  29 U.S.C. § 206(a)(1).  In addition, those that work more than 40 hours per regular workweek must be paid "time and a half" overtime compensation.  *Id.* § 207(a).  The FLSA creates a private right of action pursuant to which employees may sue their employers to recover unpaid minimum wages and overtime.  *See id.* § 216(b).

Employees who bring suit under the FLSA may do so individually or as a collective action on "behalf of . . . themselves and other employees similarly situated."  *Id.*  Unlike traditional Rule 23 class actions, FLSA collective actions operate on an "opt-in" basis in which potential class members must give affirmative notice of their consent to join the suit.  *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  The collective action tool allows plaintiffs "the advantage of lower individual

costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Of course, because FLSA collective actions are "opt-in," these benefits are only available if "employees receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.*  Notice to putative class members, however, will only issue if a collective action is conditionally certified by the district court. *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010).

District courts have discretion whether to certify proposed collective actions because section 216(b) gives them "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly[][and] sensible."  *Hoffman-LaRoche*, 493 U.S. at 170.  District courts in the Fifth Circuit generally exercise this discretion by following the "two-step *ad hoc* method" commonly known as the *Lusardi* approach. *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008) (citing *Mooney*, 54 F.3d at 1213); *see McKnight*, 756 F. Supp. 2d at 800 (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)).  The two steps of the *Lusardi* approach are the "notice stage" and the "decertification stage."  *In re Wells Fargo Wage and Hour Emp't Practices Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880, at *19 (S.D. Tex. Aug. 10, 2012).  At

the notice stage, the district court must determine whether to conditionally certify the class and issue notice to the putative class members. *See Falcon*, 580 F. Supp. 2d at 534; *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *1 (S.D. Tex. Feb. 2, 2012). Then, if a class is conditionally certified, notice may issue and the action remains a collective one throughout discovery. *McKnight*, 756 F. Supp. 2d at 802. At the decertification stage, which usually takes place only after discovery is nearly complete, the defendant may move to "decertify" the class. *Id.* District courts do not decide the merits of the parties' claims or defenses at either stage. *Id.*

In deciding whether to permit notice to other potential plaintiffs, this Court should consider only the pleadings and any other affidavits or related evidence that has been submitted. *Mooney*, 54 F.3d at 1213–14. The named plaintiffs must "make . . . a minimal showing that putative class members are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted." *Richardson*, 2012 WL 334038, at *2 (quotation marks and citations omitted). This standard is "fairly lenient" and "typically results in conditional certification of a representative class." *Mooney*, 54 F.3d at 1214 (quotation marks omitted).

The "key consideration" in determining whether the plaintiffs have satisfied this standard is that they must show "substantial allegations that potential members were together the victims of a single decision, policy, or plan." *Richardson*, 2012 WL 334038, at *2 (quoting *McKnight*, 756 F. Supp. 2d at 801) (quotation marks omitted).  In making this determination, the district court should consider whether there is evidence that the individual plaintiffs had similar "factual and employment settings" and whether there was a "common policy or plan" that affected the potential plaintiffs.  *Id.* (citing *Hardemon v. H & R Block E. Enters.*, No. 11-20193-CIV, 2011 WL 3704746, at *3 (S.D. Fla. Aug. 23, 2011); *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 937 (N.D. Ill. 2008)).  Even at the notice stage, conditional certification "should be denied if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."  *Id.* (citation and quotation marks omitted).  The fundamental inquiry is whether the plaintiffs show "some identifiable facts or legal nexus that bind the claims so that hearing the cases together promotes judicial efficiency."  *McKnight*, 756 F. Supp. 2d at 801 (quoting *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)) (brackets omitted).

Ryland advocates for the "more exacting level of scrutiny" that is sometimes applied when extensive discovery has taken place prior to the motion for conditional certification. *Richardson*, 2012 WL 334038, at *2 (citing *Hardemon*, 2011 WL 3704746, at *2).   However, under the circumstances, the Court does not believe that Plaintiffs should be held to a higher standard.  Though Ryland correctly points out that Plaintiffs did not file their motion for conditional certification until fourteen months after the initial scheduling conference, that ignores the fact that discovery was delayed while the Court considered Ryland's motion to dismiss.  Moreover, discovery thus far has been limited to "written discovery requests," and neither party has submitted any deposition testimony.  Docket Entry No. 43, at ¶ 5; *cf. Richardson*, 2012 WL 334038, at *2 (declining to apply the heightened standard even though deposition testimony and other evidence had been placed in the record).  Because the mere "fact that some discovery has been conducted does not increase the plaintiffs' burden at this first, conditional certification stage," *McKnight*, 756 F. Supp. 2d at 802, the Court will analyze Plaintiffs' motion using the ordinary *Lusardi* standard.[1]

---

[1] To the extent that Ryland argues that the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), affects the standard used in the conditional certification process, the majority of Courts addressing the issue have held that *Dukes* is inapplicable to FLSA collective actions.  *See In re Wells Fargo*, 2012 WL 3308880, at *23 (citing cases).  This Court noted reasons why *Dukes* does not affect FLSA cases in its

## III.   DISCUSSION

Plaintiffs argue that the evidence they have presented satisfies their burden under *Lusardi* to make a "minimal showing" that Ryland salespersons have similar job duties and pay provisions nationwide.  Ryland primarily argues that collective action treatment is not appropriate because individualized issues would determine whether each putative class member qualified for the Outside Sales Exemption.  Many of the issues and evidence presented in this case parallel those discussed in this Court's recent ruling in *Edwards*, which authorized notice of a nationwide collective action of all onsite salespersons employed by one of Ryland's competitors, KB Home.  *Edwards v. KB Home*, No. 3:11-cv-240, Docket Entry No. 69 (S.D. Tex. Sept. 25, 2012).  Because much of the analysis in that ruling applies equally here, the Court incorporates it in full and will only briefly review why notice is warranted.  However, Ryland does raise a separate argument not presented to this Court in *Edwards*: that the propriety of certification for Plaintiffs' overtime and minimum wage claims should be examined separately, and that there are particular weaknesses with respect to their minimum wage claim. The Court agrees that it should separately assess whether each of Plaintiffs' claims meets the *Lusardi* standard, and thus will address each in turn.  *Cf.*

---

opinion in *Edwards*.  *See Edwards v. KB Home*, No. 3:11-cv-240, Docket Entry No. 69, at 18 & n.6 (S.D. Tex. Sept. 25, 2012).

*Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386(CM), 2012 WL 1514810, at *10–15 (S.D.N.Y. May 1, 2012) (examining a plaintiff's request for FLSA conditional certification of an overtime and minimum wage class on a claim-by-claim basis).

### A. *Plaintiffs' Overtime Claim*

A review of the declarations submitted by the parties makes clear that Ryland's salespersons have similar duties nationwide and thus are similarly situated with respect to their claim for unpaid overtime. They sell homes while working from temporary sales offices in Ryland communities. They do this by showing homes, lots, and neighborhood amenities to potential customers, by performing administrative work in the sales offices, and by completing minor marketing and promotion tasks outside the communities. And they are all paid on a commission-only basis even though they allegedly work more than 40 hours per week.[2]

Just as in *Edwards*, the minor differences between the salespersons' methods of selling homes are not relevant to the *Lusardi* analysis. As this Court noted, "[t]he distinctions among salespersons that [Ryland] highlights—*e.g.*, how much time they spend outside the sale office showing

_____

[2] Indeed, all of these facts other than the number of hours that salespersons work are expressly admitted in Ryland's response, in which it states that they are true with respect to its various subsidiaries nationwide. *See* Docket Entry No. 38, at 3–15 & n.1.

homes, how often they engage in promotional activities, how many model homes they show each potential buyer, and whether or not they highlight the neighborhoods' communal amenities to potential buyers—reflect the unsurprising fact that salespersons use different sales tactics and have varying levels of success, but those different tactics do not affect [Ryland's] classification that they all fall under the Outside Sales Exemption." *Edwards*, No. 3:11-cv-240, Docket Entry No. 69, at 16.  Ryland treats its salespersons as "one homogenous group for purposes of the FLSA," and that, along with the evidence and Ryland's admissions, is sufficient to demonstrate that the putative class members are similarly situated at the notice stage.   *Id.* at 15 (quoting *Delgado v. Ortho-McNeil, Inc.*, No. SACV07-263CJCMLGX, 2007 WL 2847238, at *2–3 (C.D. Cal. Aug. 7, 2007)).

The argument Ryland made in its motion to dismiss supports this conclusion.  In that motion, in arguing that all Plaintiffs were exempt outside salespersons, Ryland stated that "Plaintiffs' job duties as Ryland sales counselors were nearly identical to the duties specifically identified in the [Department of Labor] opinion letters as those of an exempt employee."  *See* Docket Entry No. 23, at 5.  This statement acknowledges that Plaintiffs' duties were similar enough that all Plaintiffs fell within the factual pattern

presented in the Department of Labor's opinion letters.  This admission of similarity bolsters the conclusion that Ryland's salespersons are similarly situated.  Of course, Ryland may be able to win on the merits at summary judgment by arguing that the opinion letters control this case, but for now, its admission of similarity bolsters the Plaintiffs' case for notice.

### B.    *Plaintiffs' Minimum Wage Claim*

Ryland's separate challenge to Plaintiffs' ability to meet the conditional certification standard for their minimum wage claims has more force.  Although Plaintiffs have provided a factual basis for their overtime claim by submitting declarations uniformly stating that they "regularly worked more than 40 hours per week, and [were] not paid any overtime compensation," Plaintiffs have not made any similar showing with respect to their minimum wage claim.  *E.g.*, Docket Entry No. 34-1, at ¶ 12.  Indeed, Plaintiffs fail to show that they have similar minimum wage claims among themselves, let alone that they are similarly situated with all other nationwide onsite salespersons when it comes to such claims.  Plaintiffs state only that they were paid no "guaranteed minimum wage," but not that their commission payments fell below the minimum wage.  *Id.*

The evidence before the Court provides no basis for estimating the percentage of onsite salespersons that are likely to have claims that their

commissions fell below the minimum wage for the relevant pay periods. Moreover, a nationwide class of all Ryland salespersons would likely include some of the highest-performing salespersons (as they would have higher damages if the overtime claims succeed), who are unlikely to have strong minimum wage claims.  Because there is nothing before the Court that allows it to conclude that onsite salespersons are similarly situated with respect to the minimum wage claim, the Court declines to authorize nationwide notice on that claim.  *See Romero*, 2012 WL 1514810, at *10–11 (denying a motion to conditionally certify a minimum wage class of auto salespersons because there was only evidence that a single plaintiff had failed to receive the minimum wage).

### IV.   ORDER

For the foregoing reasons, **IT IS ORDERED**:

Plaintiffs' Motion for FLSA Conditional Certification (Docket Entry No. 34) is **GRANTED IN PART** and **DENIED IN PART**.

Accordingly, the following collective action class is **CONDITIONALLY CERTIFIED**: all onsite salespersons employed in the United States by Ryland or any of its subsidiaries from **January 24, 2008 until the present** and who did not receive overtime pay for any hours worked in excess of 40 hours per workweek during that time period.

Counsel for Plaintiffs and Ryland are **ORDERED** to confer and agree, if they can do so in good faith, upon the content of the Proposed Notice. The Proposed Notice should be modified to clearly reflect that the class only includes "onsite" salespersons, that is, those salespersons that were assigned to work out of temporary sales offices in Ryland's home communities.

Ryland must file any objections it may have to the Proposed Notice by **October 22, 2012**, and, by that date, it must provide Plaintiffs with the names, current or last-known physical and e-mail addresses, telephone numbers, and dates of employment of the members of the collective action class.

**IT IS SO ORDERED**.

**SIGNED** this 11th day of October, 2012.

_____
Gregg Costa
United States District Judge

15